Sikora, J.
This case was before the court on December 2, 1996 for hearing on the above-captioned motions. The case involves a claim by the plaintiff, United Casualty and Surety Insurance Company (“United”), for indemnification of expenses incurred in their capacity as surety for several construction subcontracts which the defendant Diminico Electric, Inc. (“DEI”) failed to fulfill. For the reasons which follow, the defendant’s motion to remove default and file a responsive pleading late is DENIED, the plaintiffs motion for a default judgment is DENIED, and the court orders an evidentiary hearing to assess the damages, if any, to which the plaintiff is entitled.
I. Background[1]
In November 1990, United and DEI entered into a “General Indemnity Agreement” whereby United agreed to issue performance bonds as surety for DEI on several construction projects for which DEI was a subcontractor. In return, the defendants agreed to indemnify United for expenses incurred by United in ensuring completion of DEI’s subcontracts in the event DEI defaulted on any of the subcontracts. Subsequently, DEI defaulted on three subcontracts bonded by United, and United thereafter paid other contractors to complete the work left undone by DEI.[2]
United filed suit against the defendants in March 1995, seeking indemnification of costs incurred in completing DEI’s subcontracts. In response to questioning during oral argument of the present motions, counsel for the defendants informed the court that the defendants had consulted him at the beginning of litigation but then had not employed him to defend the action on its merits. The defendants failed to respond to the claim, and on February 7, 1996, default was entered. The defendants did nothing in response to the notice of default, and on November 1, 1996 United moved for default judgment in the amount of $215,000, which it claims is the amount it spent in ensuring completion of DEI’s subcontracts. Only then did the defendants respond, filing the present motion to remove default and file a late response to the original complaint.
II. The Defendants’ Motion to Remove Default
A.Standard for Removing Default
The court may set aside a default “for good cause shown.” Mass.R.Civ.P. 55(c). The same elements apply to a motion to set aside a default as to a motion for vacating a default judgment under Mass.R.Civ.P. 60(b)(1). Smith & Zobel, Rules Practice s. 55.8 (1988). Under rule 60(b)(1), the court may set aside a judgment on the grounds of “mistake, inadvertence, surprise or excusable neglect.” The exercise of the power to grant relief from a judgment rests within the sound discretion of the judge. Berube v. McKesson Wine & Spirits Co., 7 Mass.App.Ct. 426, 429 (1979). The Massachusetts Appeals Court has delineated six factors in determining whether the court should set aside judgment for excusable neglect: 1) whether the offending party has acted promptly after entry of judgment to assert his claim from relief therefrom; 2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; 3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; 4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; 5) whether prejudice has resulted to the other party; and 6) whether the error is chargeable to the party’s legal representative.[3] See Berube, 7 Mass.App.Ct. at 430-31.
B.The Defendants’ Argument for Removing Default
In support of its motion, the defendants argue that they have a meritorious defense to the plaintiffs claim, in that the plaintiff undertook to complete work under DEI’s subcontract with RHD despite not being obligated to do so by virtue of the alleged failure of RHD to make progress payments to DEI. The defendants also claim that DEI incurred unnecessary expenses and in some instances paid for work that was not part of the subcontract. The defendants further argue that there is good cause to remove the default, as the reason they failed to respond to the plaintiffs claim was that they mistakenly believed the case had been dismissed.[4] The defendants also cite “equitable considerations,” specifically, that any judgment recovered by United is secured by the defendants James and Donna Diminico’s residence.
C.Application of the Berube Factors to the Present Case
Because it is nobody’s fault but the defendants’ for not retaining counsel in the present case, especially *196 after receiving notice that they had been defaulted, factors 4 and 6 weigh heavily against the defendants. Factor 1 likewise weighs against the defendants, as they were defaulted on Februaiy 7, 1996, and made no effort to address the matter until December 1, 1996, a month after United moved for default judgment in the amount of $215,000.'Factor 2 arguably weighs in favor of the defendants, given the defendants’ offered defense that United was not obligated to complete DEI’s subcontract with RHD and that United paid for work that was not part of DEI’s subcontracts.[5] Factor 3 weighs in favor of the defendants, although in the circumstances of this case the court does not accord this factor much weight. Finally, factor 5 weighs heavily against the defendants, as United has incurred considerable expenses since the time it filed its suit against the defendants,[6] expenses which perhaps could have been avoided had the defendants responded in a timely fashion.[7]
On balance, the court feels it would be unfair to exercise its discretion to remove the default against the defendants. It was incumbent upon the defendants to respond to United’s claim against them, if not to the original complaint, then at least when they were put on notice that the claim was still alive by the entry of the default on February 7, 1996.
III. The Plaintiffs Motion for Default Judgment
The Supreme Judicial Court has adopted the approach of the Court of Appeals for the Fifth Circuit regarding the effect of a default on the issue of liability. See Productora e Impotadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 834-35 (1978) (citing Nishimatsu Constr. Co. v. Houston Nat’l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Under that approach, a default merely establishes the truth of factual allegations and does not operate as an absolute confession by the defendant of his liability and of the plaintiffs right to recover. Productora, 376 Mass. at 834. Although it appears United will recover those expenses legitimately incurred in fulfilling its obligation as surety to see that DEI’s work under its subcontracts was completed, the amount of those expenses must be determined at a damages assessment hearing. At that hearing, the defendants will have the opportunity to contest individual expenses as having not been authorized under DEI’s subcontracts. The court emphasizes, however, that it will not consider the issue of whether DEI’s failure to complete its work was justified and thus whether United was in fact obligated to fulfill DEI’s subcontracts, as the fact of DEI’s default on its subcontracts is established for the purposes of this case as a result of the defendants’ failure to respond to United’s complaint.[8]
Here, in the absence of a specific statutoiy entitlement, no party as a matter of right merits a jury determination of damages. Use of a juiy lies in the sound discretion of the hearing judge. Smith & Zobel, Rules Practice s. 55.5 (1988).
ORDER
It is therefore ORDERED that the defendants’ motion to set aside default and file a responsive pleading late is DENIED; the plaintiffs motion for default judgment is DENIED; and a hearing for the assessment of damages be held in accordance with this opinion.

 Because the defendants defaulted on the plaintiff s claim, the factual allegations contained in the complaint are established as true. See Productora e Importadora de Papel, S.A. de C.V. vs. Fleming, 376 Mass. 826, 834 (1978). The court thus adopts these facts for the purposes of this opinion.

In its motion to remove default, DEI alleges that the principal contractor on the subcontract that forms the basis of most of the damages sought by United, RHD Construction Co., Inc., failed to make timely progress payments to DEI, and so DEI — and thus United — was not obligated to complete the subcontract. DEI’s default, however, precludes the court from inquiring into the issue of whether DEI was justified in refusing to complete its subcontract with RHD. The court’s decision in this matter does not prevent DEI from pursuing a cause of action against RHD for breach of the subcontract between those parties. DEI may also be entitled to reimbursement from RHD for any money DEI ultimately is required to pay United for work done on DEI’s subcontracts. It is for DEI to puruse any remedies it may have against RHD.

Berube involved a motion to set aside judgment based on excusable neglect attributable to conduct by counsel. See Berube, 7 Mass.App.Ct. at 430. The court will apply the Berube factors to the conduct of the defendants themselves in failing to respond to United’s complaint.

This belief arose when DEI received a copy of a joint motion to dismiss a lawsuit filed by RHD against United to compel United to satisfy its obligation as surety on the DEI subcontract, as well as a counterclaim by United. In that suit, United had cross-claimed against DEI for indemnification of any damages it may have to pay RHD in the event RHD’s suit against United was successful. The joint motion to dismiss, which was allowed on October 27, 1995, stated that RHD and United wished to “dismiss with prejudice all claims between therri’ (emphasis added). Although the dismissal of RHD’s claim against United operated to dismiss United’s cross-claim against DEI in that lawsuit, the dismissal had no effect on United’s direct lawsuit against DEI. The court does not disbelieve the defendants’ contention that they thought the joint motion indicated United’s direct claim against them was dismissed. However, once the defendants were defaulted on the direct claim on February 7, 1996, they were put on notice that United’s claim against them was still pending, and yet they did nothing in response until United moved for default judgment nine months later.
The court notes that DEI was also defaulted on a claim against it by RHD, filed as part of the same complaint that contained RHD’s claim against United. DEI should have been far more careful about protecting its interests in both that lawsuit and this one.

he defendants will have an opportunity to avail themselves of the argument that some of the work completed by United was not called for under DEI’s subcontract in the damages assessment context.

The original complaint stated that United had incurred about $35,000 in expenses at the time the suit was filed in March of 1995, while they now claim that they have incurred $215,000 in expenses.

The defendants argue that United would not be prejudiced if the default were removed, because United has a security in the defendants’ home in the event it is successful in this lawsuit. But the defendants are seeking to assert defenses which, they argue, would defeat United’s claim. The *197 defendants fail to acknowledge that if their defenses were raised when they should have been, and if the defenses are indeed valid, then United would likely not have continued to spend money to complete DEI’s subcontracts over the 21 months that have elapsed since United filed their complaint. Thus, the amount of money United could have potentially lost in unnecessarily fulfilling its surety obligations would have been much smaller.

The court understands the defendants’ concern about the potential ramifications should the plaintiff recover a substantial judgment, as the plaintiff has a security in the defendants’ home to satisfy any judgment. In these circumstances, however, the court does not feel that United should risk the loss of all of the money spent to fulfill its obligation as surety on DEI’s subcontracts, especially when the defendants could have timely raised the issue of any alleged breach by RHD, and thereby excused DEI and United from completing work on DEI’s subcontract with RHD. As stated in note 2, supra, the defendants may seek payment from RHD for the work done under DEI’s subcontract and for which DEI is ultimately required to indemnify United.